UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN SRYGLEY,

              Plaintiff,

                                         CASE NO. 16-CV-10346
v.                                      HON. GEORGE CARAM STEEH

CRYSTAL EMPLOYMENT
SERVICES,

              Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION
## FOR SUMMARY JUDGMENT (Doc. 43)

Plaintiff Steven Srygley brought this discrimination suit under the

Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the

Michigan Persons with Disability Civil Rights Act, M.C.L. § 37.1101 *et seq.*

("PWDCRA"), against his prior employer, defendant ABB Discrete

Automation and Motion Division ("ABB"), for wrongful termination allegedly

because of his colo-rectal cancer and his request for access to a bathroom

and flexible scheduling to accommodate his disability. Srygley has also

sued the employment agency who placed him with ABB, defendant Crystal

Employment Services' ("Crystal" or "defendant"), for disability

discrimination arising out of defendant's failure to place him in a new position after ABB fired him.  Plaintiff has settled his claims against ABB and that defendant has been dismissed.  The matter now before the court is Crystal's motion for summary judgment.  Oral argument was heard on July 20, 2017.  Because Srygley cannot establish that Crystal took an adverse employment action against him, the court shall GRANT Crystal's motion for summary judgment.

## I. Factual Background

Crystal is an employment agency that provides workers to automotive clients.  Crystal refers workers to clients who control the terms and conditions of the worker's employment, including the discretion to make decisions regarding hiring, firing, discipline, and wages.  Crystal is paid a percentage for each placement.

Crystal hired Srygley in October, 2008, to work as a machine builder for its customers.  In October, 2010, Srygley began working for Crystal's customer ABB.  Around 2012, Srygley was treated for colo-rectal cancer. He underwent surgery and fourteen inches of his colon and more than half his rectum were removed, leaving him with severe incontinence problems. As a result of the cancer, he was out of work for over one year.

In September, 2013, Srygley contacted Crystal, notified the agency that he had his ileostomy bag removed and thus, his doctor had said he could try returning to work. He informed Crystal that he wanted to try to return to work on a trial basis, and that he was not sure if he was ready for full-time employment. He told Crystal he was unsure of his stamina, or his ability to maintain his bowel movements. After their discussions, on September 5, 2013, Crystal hired Srygley to work part-time in-house at its shop. After 30 days, Srygley returned to full-time work for ABB. In June, 2015, ABB fired him. Srygley does not allege that Crystal played any role in ABB's decision to terminate him.

On the same day that ABB terminated him, Crystal contacted Srygley and offered him a job in Farmington Hills, Michigan at the same rate of pay. Srygley, who resides in Flint, declined the position because his condition prevented him from driving more than 40 miles from his home. Srygley maintains that he asked Crystal's office manager, Nancy Swink, to tell potential customers of his medical issues, including his incontinence, but she allegedly told him that Crystal does not do that. After Srygley turned down the Farmington Hills' position, Crystal then offered him employment for a customer, Kuka, located in Fenton, Michigan. Srygley responded that

he needed car repairs and asked for a loan to fix his car. Crystal's partner, Michael Stanley, loaned Srygley $600 to repair his vehicle and asked Kuka to delay the start date by one week so that Srygley could do so. Srygley took two weeks to fix his car at which time the Kuka position had been filled. On September 2, 2015, Crystal telephoned Srygley to offer him a position at Thyssen Krupp System Engineering in Auburn Hills, Michigan, which was within Srygley's driving radius, but he did not return the calls. Then, on September 8, 2015, Crystal offered Srygley a position in Charlevoix, Michigan and offered a per-diem and hotel within Srygley's driving restrictions, and again Srygley declined the position.

On September 8, 2015, Srygley sent Crystal a letter with supporting documentation from his doctor stating:

> In regards to our previous conversations, I am asking that you accept the enclosed letter from Dr. Devisetty M.D. as proof of accommodations needed to perform daily work activities. Note, this is an abbreviated list, additional doctors restrictions and verification will be provided on a need to know basis. Below, are a few accommodations I require:
>
> * Bathroom Access
> * No more than 40 per week due to Neuropathy
> * Flexible scheduling to allow for doctors appointments
> * Ability to leave work without notice if necessary to reserve my dignity (incontinence).

> As required, I am notifying you and any potential employer and/or placement of these conditions and request for reasonable accommodations.
>
> As a co-employer, I request that this information be shared and agreed upon before placement.

(Doc. 45-3 at PageID 656).

The next day, Crystal responded by letter dated September 9, 2015 and authored by Stanley stating:

> Based on the letter that you faxed the office, we will be unable to meet the accommodations you require to perform your daily work activities. While we are unable to meet your needs, it is still a requirement of the Unemployment Insurance Agency that you be seeking work with other employers that will meet those accommodations for you.
>
> At this time we are asking that you return the $600.00 loan that was given to you on 8/17/2015 to fix your vehicle as a condition on you returning to work. Since you will not be returning, we are asking that the funds be returned to the office by September 18, 2015.

(Doc. 45-4 at PageID 659). On the same day, Crystal sent a letter to the Unemployment Insurance Agency outlining the various job placements it had offered to Srygley but which he had rejected, and informing the Agency that it had laid Srygley off on June 19, 2015, and was unable to accommodate his requirements. (Doc. 45-5 at PageID 661).

Srygley characterizes the September 9, 2015 letter as a termination letter whereas Crystal maintains that the letter merely advised Srygley that

it did not have any open positions to offer at that time that met his conditions. It is undisputed that one month later, on October 10, 2015, Crystal contacted Srygley and offered him a placement at Thyssen Krupp. At that time, Srygley informed Crystal that he had already accepted that position at the same location and rate of pay through another placement agency, a competitor of Crystal.

## II. Standard of Law

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see also Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l*

*Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (*citing Anderson*, 477 U.S. at 252).

### III. Analysis

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Claims under the PWDCRA "essentially track those under [the ADA]." *Demyanovich v. Cadon Plating & Coatings, L.L.C.,* 747 F.3d 419, 433 (6th Cir. 2014) (internal quotation marks and citations omitted). To prevail on a claim for disability discrimination under the ADA, a plaintiff must show that he or she "(1) is disabled, (2) otherwise qualified to perform the essential functions of the position, (3) suffered an adverse employment action because of his or her disability. *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)); *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 317, 321 (6th Cir. 2012) (en banc)). Because Srygley has failed to show

that he suffered an adverse employment action or that discrimination was the cause of any adverse employment action, Crystal's motion for summary judgment shall be granted.[1]

A plaintiff may prove disability discrimination by direct or indirect evidence. Direct evidence requires proof that the plaintiff suffered an adverse employment action because of his or her disability. *Id.* Plaintiff bears the burden of proving that he or she is "disabled" and is "otherwise qualified" for the position despite his or her disability: "a) without accommodation from the employer; b) with an alleged 'essential' job requirement eliminated; or c) with a proposed reasonable accommodation." *Id.* Once the plaintiff meets his or her burden, the employer must show that a challenged job criterion is essential or that a proposed accommodation would impose an undue hardship on the employer. *Id.* "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys. Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). Courts have found the following examples to

---

[1]Crystal also argues that Srygley is not disabled under the ADA or that he is judicially estopped from raising an ADA claim because he previously sought social security disability benefits. Both arguments lack merit. *See Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 467 (6th Cir. 1999) (irritable bowel syndrome may constitute a qualifying disability under the ADA); *Cleveland v. Policy Mmgt. Sys. Corp.*, 526 U.S. 795, 802 (1999) (application for social security disability benefits does not preclude ADA claim).

constitute direct evidence of discrimination: (1) a supervisor's alleged statement that she chose a particular candidate "to maintain racial balance*,"* (2) a supervisor's alleged statement that an Italian-American probationary employee was a "dirty wop" and there were too many "dirty wops" working at the facility and a supervisor's alleged statement than an employee was "no spring chicken" and was too old for a supervisory position, and (3) a letter to an employee seeking to return from work from medical leave stating that he was being terminated due to his long term disability.  *Lovell v. Champion Car Wash, LLC*, 969 F. Supp. 2d 945, 951 (M.D. Tenn. 2013) (citations omitted) (collecting cases).

To prevail based on indirect or circumstantial evidence, the court follows the familiar *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) burden-shifting approach.  Under that method, the plaintiff must establish his or her prima facie case by showing that "(1) he or she is disabled, (2) he or she is otherwise qualified for the position, with or without reasonable accommodation, (3) he or she suffered an adverse employment decision, (4) the employer knew or had reason to know of the plaintiff's disability, (5) the position remained open while the employer sought other applicants or the disabled individual was replaced."  *Ferrari*, 826 F.3d at 891-92.  In determining whether the direct or indirect method applies, the

court considers whether the employer acknowledges that it relied on the plaintiff's disability in making its employment decision.  Under those circumstances, the direct method controls.

Srygley seeks to prevail based upon a claim of direct evidence of discrimination.  He asserts Crystal discriminated against him by sending the September 9, 2015 letter, which he claims was a termination letter sent in retaliation for his September 8, 2015 letter outlining his medical restrictions, but which Crystal contends was merely a notification that it lacked open positions which met his requirements at that time.  Viewed in isolation, Srygley is correct that the letter does indeed sound like a termination letter.  But when viewed in the context of the two-year span in which Crystal assisted Srygley in job placement after his return from medical leave, a common sense interpretation of the letter is that Crystal was merely informing Srygley that it lacked open positions which met his medical restrictions at the time.  This interpretation is bolstered by the fact that Crystal notified Srygley of a possible job placement one month after it sent the letter in question.  Moreover, Srygley has identified no open positions for which he was qualified which Crystal failed to offer to him.

Srygley argues that the September 9, 2015 letter must be viewed as direct evidence of discrimination because it was drafted by Crystal the day

after he sent the agency a letter outlining his medical restrictions. But his September 8, 2015 letter was not the first time he notified Crystal of his limitations. In fact, Crystal had known of his condition for several years, had been working with him since his medical leave in 2012, and had hired him at its own shop on a trial basis when Srygley first returned to work in 2013. Also, at his deposition, Srygley testified that he told Crystal of his incontinence issues on the day he was let go from ABB.

In addition, Michael Stanley, a partner at Crystal, was the author of the September 9, 2015 letter. The evidence shows that Stanley did not have any discriminatory animus towards Srygley as he personally loaned Srygley the funds needed to repair his vehicle to enable Srygley to get to work. *See Wofford v. Middletown Tube Works, Inc.*, 67 F. App'x 312, 318 (6th Cir. 2003) (finding no discriminatory animus where supervisor who fired plaintiff had previously collected money on his behalf so that he could attend his mother's funeral and to help fund his hernia surgery).

In the typical ADA action involving a direct employer, where an employee requests a job transfer as a reasonable accommodation, the employer must attempt to locate such a position, but the employee bears the burden of identifying an open position and must show that he is qualified for that position. *Rorrer v. City of Stow*, 743 F.3d 1025, 1040 (6th

Cir. 2014). Moreover, the employer need only reassign an employee to a vacant position. *Id.* The situation here is slightly different because the defendant is not the direct employer, but a placement agency, thus making the admonition that a transfer to a different position is only required when such a position exists even more apropos. The same analysis should apply where a placement agency is the employer as it only has an obligation to place an employee in a new position which actually exists. Unlike a direct employer who could arguably carve out a new position for a disabled employee, but who is nevertheless not required to do so under the ADA, a placement agency in all probability lacks the ability to create a position with one of its customers, but merely has the wherewithal to fill open positions that already exist in the marketplace.

In determining whether transfer to a new position is possible, the employee and his employer are charged with engaging in an "interactive process" and both are expected to participate in good faith. *Id.; see* 29 C.F.R. § 1630.2o(3) ("To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation."). Here, the evidence demonstrates that Crystal engaged in the "interactive process" in good faith. When Srygley first

approached Crystal that he was ready to try to return to work on a part-time basis, Crystal hired him to work in-house at his shop. Crystal then helped him to return to ABB as a full-time employee. After ABB terminated him, Crystal offered him a new position with another automotive customer that same day. When that position proved to be too far for Srygley to drive, Crystal offered him another position closer to his home.

When Srygley complained that he could not accept that position because his vehicle was in need of repair, Crystal's partner loaned him the money to fix his car. When that position was filled before Srygley completed the necessary repairs, Crystal offered Srygley yet another position in Northern Michigan which was also unacceptable to Srygley. Finally, Crystal offered to place Srygley in yet another position in October, 2015. Given that Crystal placed Srygley in its shop on a trial basis when he first returned to the work force from his medical leave, placed him with its former client, and then attempted on four separate occasions to place him with another customer when his first placement did not work out, Crystal did engage in good faith in the interactive process envisioned by the ADA. Under these circumstances, Crystal is not liable under the ADA or the PWDCRA for disability discrimination.

### IV. Conclusion

For the reasons set forth above, defendant Crystal's motion for summary judgment (Doc. 43) is GRANTED and this action is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated:  August 1, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on August 1, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk